1  Shawn A. McMillan, Esq. – SBN: 208529
2  Stephen D. Daner, Esq. – SBN: 259689
   THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
   4955 Via Lapiz
3  San Diego, California 92122
   Telephone: (858) 646-0069
4  Facsimile: (858) 746-5283

5  Attorneys for Plaintiff Rachelle Gomez
   in her individual capacity and as successor
6  in interest for Decedent Gael Martinez

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rachelle Gomez in her individual capacity and as successor in interest for Decedent Gael Martinez<br><br>                    Plaintiff,<br><br>vs.<br><br>County of Los Angeles, a public entity; Candice Brown, an individual; Doris Lemieux, an individual; Eboni Crowe, an individual; Adrian Hawkins, an individual; County DOE Workers 1-10, unidentified named individuals; The City of Beverly Hills, a public entity; Officer DOE Lovell, an unidentified individual; Officer U. Mendoza, an individual; Police Officer DOES 1-10; Humanistic Foundation, Inc., a California corporation; Group Home DOE Employees 1-10, unidentified known individuals;<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**First Cause of Action:** Violation of Civil Rights (42 U.S.C. § 1983) – Fourth & Fourteenth Amendment – Unwarranted Seizure<br>  **Count 1:** Against City of Beverly Hills, U. Mendoza, and Police Officer DOES 1-10<br>  **Count 2:** Against County of Los Angeles, Candice Brown, Doris Lemieux, and Social Worker DOES 1-10<br>**Second Cause of Action:** Violation of Civil Rights (42 U.S.C. § 1983) Fourteenth Amendment –Deception in The Presentation of Evidence<br>**Third Cause of Action:** Violation of Civil Rights (42 U.S.C. §   1983) – Fourteenth Amendment – Failure to Provide Minimally Adequate Safety, Security, Supervision, and/or Care<br>**Fourth Cause of Action:** Violation of Civil Rights (42 U.S.C. §   1983) *Monell*-Related Claims<br>**Fifth Cause of Action:** Wrongful Death<br>**Sixth Cause of Action:** Breach of Mandatory Duties<br>**Seventh Cause of Action:** Breach of Duties Imposed Under a Special Relationship<br>**Eighth Cause of Action:** Negligence<br><br>**<u>Jury Trial Demanded</u>** |

**Jurisdiction and Venue**

1. This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, over Plaintiffs' claims for Violation of Civil Rights 42 U.S.C. §1983.

2. The acts and omissions alleged in this Complaint (hereinafter "Complaint") occurred in the County of Los Angeles, and it is believed that all living parties and public/private entity parties currently reside in or are situated in the County of Los Angeles.

3. This action is brought, at least in part, pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and/or omissions taken under color of law which violated Plaintiff's rights, and those of the Decedent, arising under the 1st, 4th, and 14th Amendments to the United States Constitution. In addition, this action is brought to seek redress for Defendants' acts and/or omissions which resulted in their failure to adhere to the mandatory statutory duties they owed to the Plaintiff and Decedent under both federal and state law.

**The Parties**

4. At all times relevant to this Complaint, Plaintiff Rachelle Gomez ("Rachelle") was a resident of Los Angeles County, California – a was the Decedent, Gael Martinez.

5. Plaintiff Rachelle Gomez presents her individual claims and also presents survival claims on behalf of her deceased son, Gael Martinez, (also referred to herein from time to time as "Decedent" and/or "Gael") as Decedent's successor in interest. Rachelle Gomez resides in the County of Los Angeles.

6. Gael Martinez, the Decedent on whose behalf survival claims are asserted, was born on December 19, 2003 and died on October 15, 2020 in Los Angeles County. Gael died without a will. His mother, Rachelle Gomez, is an intestate heir and beneficiary of Gael's estate. No proceeding is now pending in California for administration of Gael's estate. Rachelle Gomez qualifies as Gael's successor in

interest pursuant to California Code of Civil Procedure §377.11 and is authorized to commence an action or proceeding on Gael's behalf pursuant to California Code of Civil Procedure §377.32. Rachelle Gomez is authorized to act on Gael's behalf as his successor in interest with respect to her interest in this action and/or proceeding. No other person has a superior right to commence this action or proceeding or to prosecute it to its natural conclusion.

7. The acts and omissions complained of herein occurred in the County of Los Angeles, and it is believed that all living Defendants currently reside in the County of Los Angeles. Venue is thus proper in the California Superior Court reposed in the County of Los Angeles.

8. Plaintiff makes the following allegations and claims upon personal knowledge, investigation of her counsel, and on information and belief.

*– The County Defendants*

9. Defendant County of Los Angeles ("County") is a public entity of which the Los Angeles County Department of Children and Family Services ("DCFS") is a subdivision. On April 1, 2020 Plaintiff Rachelle Gomez submitted two governmental claims to the County of Los Angeles, one on her own behalf, individually and a separate claim on behalf of Decedent Gael Martinez, her son. These claims were submitted pursuant to the provisions of California Government Code §§910 et seq. By the time this complaint will have been served, Forty-five days will have elapsed since the submission of these claims and they are, or will have been, deemed rejected.

10. At all times relevant to this Complaint, DCFS agent/Defendant Candice Brown, was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of the County of Los Angeles and DCFS. At all relevant times alleged herein, she was acting under color of law and within the course and scope of her duties in doing the things alleged herein.

11. At all times relevant to this Complaint, DCFS agent/Defendant supervisor Doris

Lemieux was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of the County of Los Angeles and DCFS. At all relevant times alleged herein, she was acting under color of law and within the course and scope of her duties in doing the things alleged herein.

12.     At all times relevant to this Complaint, DCFS agent/Defendant Eboni Crowe was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of the County of Los Angeles and DCFS, and assigned to oversee and manage the investigation, detention, placements and services which were required to be provided to Gael Martinez, and which he was entitled to while he was entrusted to the custody, care, and control of Los Angeles County. Moreover, once Gael Martinez came under the control and supervision of the County of Los Angeles, during the time she was assigned to his case this Defendants was responsible to ensure Gael's continued safety and security as well as to ensure that he received at least minimally adequate care (including mental health care) and supervision. At all relevant times mentioned herein, this Defendant was acting within the course and scope of her duties as an employee and/or agent of Los Angeles County. In addition, at all relevant times she was acting in accordance and conformance with the regularly-established customs and practices of Los Angeles County DCFS. Finally, at all relevant times alleged herein, this Defendant was acting under color of law.

13.     At all times relevant to this Complaint, DCFS agent/Defendant Adrian Hawkins was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of the County of Los Angeles and DCFS, and assigned to oversee and manage the investigation, detention, placements and services which were required to be provided to Gael Martinez, and which he was entitled to while he was entrusted to the custody, care, and control of Los Angeles County. Moreover, once Gael Martinez came under the control and supervision of the County of Los Angeles, during the time she was assigned to his case this Defendants was

responsible to ensure Gael's continued safety and security as well as to ensure that he received at least minimally adequate care (including mental health care) and supervision. At all relevant times mentioned herein, this Defendant was acting within the course and scope of her duties as an employee and/or agent of Los Angeles County. In addition, at all relevant times she was acting in accordance and conformance with the regularly-established customs and practices of Los Angeles County DCFS. Finally, at all relevant times alleged herein, this Defendant was acting under color of law.

14.   At all times relevant to this Complaint, County Worker DOES 1-10 were individuals residing in the County of Los Angeles and were officers, agents, and/or employees of the County of Los Angeles and DCFS. At all relevant times alleged herein, County Social Worker DOES 1-10 were acting under color of law and within the course and scope of their duties in doing the things alleged herein.

15.   Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as County Worker DOES 1-10, and for that reason has sued such Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to identify the County Worker DOE Defendants when their identities have been ascertained. Each of the fictitiously named County Worker DOE Defendants was, and is, in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

16.   Hereinafter, when referred to collectively, the Defendants in paragraphs 9 through 16, inclusive, may occasionally be referred to as the "County Defendants."

*– The Beverly Hills Police Defendants*

17.   Defendant City of Beverly Hills ("City") is a public entity of which the Beverley Hills Police Department is a subdivision.

18.   At all times relevant to this Complaint, Defendant U. Mendoza was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of

the City of Beverly Hills. At all relevant times alleged herein, he was acting under color of law and within the course and scope of his duties in doing the things alleged herein.

19. At all times relevant to this Complaint, Defendant Officer DOE Lovell was an individual residing in the County of Los Angeles and an officer, agent, and/or employee of the City of Beverly Hills. At all relevant times alleged herein, he was acting under color of law and within the course and scope of his duties in doing the things alleged herein.

20. At all times relevant to this Complaint, Police Officer DOES 1-10 were individuals residing in the County of Los Angeles and were officers, agents, and/or employees of the City of Beverly Hills. At all relevant times alleged herein, they were acting under color of law and within the course and scope of their duties in doing the things alleged herein.

21. Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as Police Officer DOES 1-10, and for that reason has sued such Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to identify the Police Officer DOE Defendants when their identities have been ascertained. Each of the fictitiously named Police Officer DOE Defendants was, and is, in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

22. Hereinafter, when referred to collectively, the Defendants in paragraphs 17 through 21, inclusive, may occasionally be referred to as the "City Defendants."

*– Group Home Defendants*

23. At all times relevant to this Complaint, Defendant Humanistic Foundation, Inc., was a California corporation in good standing doing business as "New Concept Group Home" with its principal place of business located in the County of Los Angeles. Defendant Humanistic Foundation, Inc., provided foster care services to

the County of Los Angeles under a written contract and in exchange for money. Sometime after May 1, 2019, Los Angeles County Defendant and Humanistic Foundation entered into a contract Humanistic Foundation was to provide child care and social services to Gael Martinez. Said services included ensuring the continued safety, security, supervision, and provision of at least minimally adequate care, including but not limited to mental healthcare and psychological/therapeutic services to Gael. The County paid Humanistic Foundation for Gael's care and supervision. At all relevant times, Humanistic Foundation operated pursuant to this child care and social services agreement in providing traditional government foster care and supervision including related social services, mental health care services, and therapeutic services.

24.   On information and belief, Group Home DOES 1 through 10, and each of them, were at all times residents of the County of Los Angeles, and were employees of Defendants Humanistic Foundation, Inc. At all relevant times, Group Home Does 1 through 10, and each of them were acting within the course and scope of their duties and according to the regular customs and practices of Defendant Humanistic Foundation, Inc. in relation to their provision of services and/or failure to provide services including mental health and therapy services to the Decedent, Gael Martinez.

25.   Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as Group Home Does 1 through 10, and for that reason has sued such Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to identify the Group Home Does when their identities have been ascertained.

26.   Each of the fictitiously-named Group Home Does was in some manner liable and legally responsible for the harms sustained by Plaintiff and/or Gael in that their conduct caused the damages and injuries set forth herein. At all relevant times alleged herein Group Home Does 1 through 10, and each of them, were acting

under color of law and within the course and scope of their duties.

27.  Hereinafter, when referred to collectively, the Defendants in paragraphs 23 through 26, inclusive, may occasionally be referred to as the "Group Home Defendants."

*– Miscellaneous Party Affiliations*

28.  Whenever this Complaint makes reference to any act of Defendants, or any of them, such allegations shall be deemed to mean all named Defendants, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants (or any of them) and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

29.  At all times relevant to this Complaint, Defendants were the knowing employees, agents, and/or alter egos of one another and were acting within the course and scope of their duties in such capacity. Defendants, and each of them, directed, ratified, and/or approved each other's conduct and that of each other's agents or employees. Defendants, and each of them, agreed upon, approved or ratified each other's conduct, or otherwise conspired together to commit all of the acts and/or omissions alleged herein.

## COMMON FACTUAL ALLEGATIONS

*– Family Background & Custody Status Leading up to Defendants' Violation of Plaintiffs' Rights*

30.  Plaintiff Rachelle Gomez's son, Gael, was born on December 19, 2003. Her younger son, I.M., was born on August 27, 2005. Rachelle and her sons moved to Los Angeles from the bay area in, or about, August 2018. At that time there was an open juvenile dependency case relating to Gael and I.M. which had been transferred to Los Angeles County when Rachelle moved there. At that time, both of her children resided with her under the supervision of the County of Los

Angeles in what is referred to as a "family maintenance" plan. Thus, both Rachelle and her children had a constitutionally protected right to remain together as a family unit without unwarranted governmental interference. Absent a court order authorizing the teenagers' removal from their mother's care, consent, or an emergency circumstance it would have been unlawful and a violation of Plaintiff's constitutional right under the First and Fourteenth Amendments to the United States Constitution for a government agent to seize and/or detain Rachelle's children from her care. During this period of time, Defendant Eboni Crowe was the family's case carrying social worker with the County of Los Angeles DCFS. Defendant Adrian Hawkins was Crowe's supervisor. Rachelle Gomez participated to the fullest extent possible in her services with DCFS. Neither Crowe nor Hawkins ever complained that she was uncooperative in the case plan prior to May 1, 2019.

31. During the time period that Rachelle was participating fully in her required services under the "family maintenance" plan, it became apparent to Los Angeles County, particularly to Defendants Crowe and Hawkins as well as County Worker DOES 1-10, that Gael had anger issues, impulse control problems, and unresolved emotional issues stemming from his prior stint in foster care in Palo Alto. The County Defendants, and each of them, knew with reasonable certainty that Gael required extensive therapeutic and/or mental health care as early as August 2019. From August 2019 forward, Rachelle consistently reported Gael's unruly and disrespectful behaviors to County Defendants, and each of them, and requested mental health and therapeutic services to help Gael with his emotional and mental health issues.

– ***Beverly Hills Police Seize Rachelle's Sons Without First Obtaining a Warrant, Without Consent, and in the Absence of Exigent Circumstances***

32. On May 1, 2019, City Defendants, and each of them, unlawfully seized Gael and I.M. and detained them without just cause, without first obtaining a warrant and in

the absence of any exigent circumstance. At the time of their unwarranted seizure both teens appeared to be well nourished, appropriately dressed, in good health and generally well cared for. When they were seized, the teens did not appear to be in any immediate danger of suffering severe bodily injury or death in the time that would have been required to obtain a warrant. Nor had either teen committed any crime which would have justified police action against them.

33.    Upon seizing the teens, these City Defendants, and each of them, then transported Gael and I.M. to the Beverly Hills Police Station where they were held for questioning by Defendants U. Mendoza, Los Angeles County DCFS agent Candice Brown and Police Officer Does 1-10. Their mother, Rachelle Gomez, was notified by telephone of the fact of their seizure and detention. She did not consent to either their seizure or continued detention. The caller requested that she report immediately to the police station. Rachelle complied.

–    ***Candice Brown And Her Supervisor Doris Lemieux Continue to Detain Rachelle's Children From her Care Without Consent, a Warrant, or Exigent Circumstances***

34.    On May 1, 2019, when Defendant Candice Brown interviewed Gael and his brother, I.M. at the Beverley Hills police station, she discovered that there was no legitimate and/or lawful basis to detain either teenager from the custody of their mother and that to do so would require a court order signed by a judge. At the time she interviewed the teenagers, it was apparent to Candice Brown that both teenagers were in good health, appeared to be well cared for and did not appear to be in any immediate danger of suffering severe bodily injury or death at the hands of their mother in the time that would be required to obtain a warrant. Yet, Defendant Brown refused to release the boys to their mother's custody. Instead, she continued to detain them from the custody of their mother and shuttled them off to foster care.

35.    Upon receiving the boys from the City Defendants, based on her training and

experience, Brown was aware that she was required to immediately release the teenagers to the custody of their mother, Rachelle, because their was no danger that either teenager would suffer severe bodily injury or death in the few hours it would have taken to obtain a warrant to continue to detain them. (See California Welfare and Institutions Code §309; see also *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018), finding that children cannot be held away from their parents any longer than is necessary to abate any alleged emergency.) Thus, as soon as it was apparent to Brown that no serious or life threatening danger existed, she had a constitutional duty to return the teenagers to Rachelle – unless she sought and obtained a warrant for their continued detention on May 1, 2019 – which she did not do.

36. Brown consulted with her supervisor, Defendant Doris Lemieux before, during, and after her interviews with Rachelle's teenage boys. During the consultation Brown relayed all of the relevant information she obtained during her "investigation." Based on the information Brown relayed to Limieux, both Brown and Limieux agreed to seize the boys without first obtaining a court order authorizing their seizure and continued detention, and then to continued to detain the boys even though there was no evidence to suggest that either teenager was in immediate danger, and even though there was plenty of time within which to obtain a warrant or other authorizing court order. At no time did Rachelle Gomez consent to either the initial seizure or the boys' continued detention.

37. The First, Fourth, and Fourteenth Amendments guarantee "that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107-09 (9th Cir. 2001). Officials may not remove children from their parents without a court order unless they have "information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury." *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018). Based on the training they

1   had received from the County of Los Angeles, both Brown and Lemieux knew all

2   of this, yet they decided to seize and continue to detain the teens anyway.

3   Moreover, any reasonable government social worker faced with the same or

4   similar circumstances would have known that Defendants' seizure and continued

5   detention of the teenagers violated Plaintiffs' clearly established rights under the

6   First, Fourth, and Fourteenth Amendments to the United States Constitution.

7   38.   Plaintiff is informed and believes and on such basis alleges that notwithstanding

8   the misconduct of the above County Worker Defendants and City Defendants, and

9   each of them inclusive, none of these Defendants has been disciplined in any way

10   for the conduct alleged herein. Moreover, Plaintiff is informed and believes and on

11   such basis alleges, that neither the Beverly Hills Police Department nor the County

12   of Los Angeles has ever disciplined a single one of their employees for seizing a

13   child from its parents without a warrant when one should have been obtained.

14   –   ***County Defendants Place The Teenagers, Gael and I.M. in Foster Care But***

15   ***Then Fail to Monitor the Boys in Placement And Fail to Provide Gael***

16   ***Necessary Services as Mandated by Regulations***

17   39.   Once Gael and I.M. were ensconced in Los Angeles County's custody, County

18   Defendants, and each of them, were statutorily mandated to assess the teenagers

19   for a safe and secure placement, then monitor their placement to ensure the boys'

20   needs, including their emotional and mental health care needs, were met.

21   40.   County Defendants, and each of them, were assigned to oversee and manage Gael

22   and I.M.'s placements, safety, security, and services which were required to be

23   provided to the teens while in County custody, and which they were entitled to

24   during the time that they were entrusted to the custody, care, and control of the

25   Los Angeles County. Yet, County Defendants, and each of them, failed or

26   otherwise refused to perform the mandatory statutory requirements to monitor the

27   boys while in placement to ensure that their needs were met, including their needs

28   for adequate safety, security, supervision, and medical care including mental

COMPLAINT FOR DAMAGES

1    health care for Gael.

2    41.    On, or about, May 1, 2019 Defendant Brown and County Worker DOES 1- 10,

3           placed the teenagers with Jose Padilla, and Laura Padilla without first conducting

4           the required placement assessment.

5    –      ***Candice Brown and Doris Lemieux File Their False Detention Report With The***

6           ***Juvenile Court; The Court Orders The Teens Continue to Be Detained***

7    42.    On May 2, 2019, Defendants Candice Brown and Doris Lemieux filed their

8           Detention Report with the Juvenile Court.

9    43.    The Detention Report is the primary evidentiary document the Juvenile Court

10          relies on in making its decision at the Detention Hearing. The Detention Hearing

11          is usually the first court proceeding that happens in a Juvenile Dependency case. A

12          Detention Hearing is akin to an arraignment in that at the Detention Hearing,

13          among other things, the Court will decide whether there is sufficient "evidence"

14          set out in the Detention Report to support a prima facie case under *California*

15          *Welfare and Institutions Code* §300.

16   44.    At the time Brown and Lemiuex signed their Detention Report they were both

17          aware, through their experience and training provided by the County of Los

18          Angeles, that their report was the primary evidence the Juvenile Court would rely

19          on in making its decisions at the Detention Hearing. By the same means, Brown

20          and Lemiuex were both aware that the decisions made by the Juvenile Court at the

21          Detention hearing would have far-reaching implications and impacts on this

22          family.

23   45.    Brown and Lemiuex submitted their May 2, 2019 Detention Report which they

24          knew the Juvenile Court would rely on at the May 6, 2019 Detention Hearing

25          knowing that it was critical that they set out the entire history of the case in a

26          truthful, honest, and accurate manner. At the time they signed the report, as

27          detailed above, both of them knew that the report would be filed with the court

28          and would likely be accepted into evidence and relied upon by the court in making

1      its decisions.

2   46.   Nonetheless, when they drafted their report Brown and Limieux failed to report to

3      the court the fact that Gael had known violent tendencies, emotional and impulse

4      control problems and frequently experienced violent outbursts. They also were

5      aware that Rachelle had requested assistance from them on multiple occasions in

6      dealing with Gael's emotional and psychological needs. Instead of reporting the

7      entire true history of their dealing with this family, Lemieux and Brown falsely

8      reported to the juvenile court that Rachelle physically abused the children and that

9      the "Department" had concerns for I.M. and Gael's well-being due to physical

10     abuse of the teens "by [their] mother" Rachelle Gomez. In fact, at the time these

11     Defendants made their report, they were aware that Rachelle Gomez did not

12     physically abuse either of her children.

13  47.   As early as August 2019, Defendant Candice Brown was aware that Gael had

14     anger issues, was prone to violent out bursts, would frequently assault his mother

15     and required a mental health assessment by a licensed mental health professional

16     in order to coordinate and provide treatment and other related services to Gael.

17     But neither Brown nor Lemieux so informed the juvenile court in their May 6,

18     2019, Detention Report. Nor did either of them undertake to obtain such services

19     for Gael.

20  48.   In addition, even though Brown and Lemieux were aware that Rachelle was

21     compliant with her case plan, and had been since the time she moved down to Los

22     Angeles from Palo Alto, they falsely reported to the juvenile court that Rachelle

23     had been "uncoopertive" and "refused" to participate in services through the

24     Department. This statement was patently untrue. Rachelle had been totally

25     compliant with the family maintenance plan imposed on her family by the

26     Department.

27  49.   In their false and fraudulent Detention Report Brown and Lemieux further

28     reported that Gael was visually observed to have multiple marks and bruises

COMPLAINT FOR DAMAGES

"inflicted by" Rachelle. This was not true and Defendants Brown and Lemieux knew it was not true at the time they wrote their Detention Report and filed it with the juvenile court. In fact, on April 29, 2019 these Defendants were aware through on going conversations with Rachelle that I.M. and Gael got into a fist fight the day before – due to another of Gael's unprovoked violent outbursts and that Gael had received his "marks and bruises" in that scuffle with his younger brother. All of this had been reported to Brown and Lemieux in the days leading up to May 1, 2019. None of Gael's minor injuries that Brown identified in her Detention Report had been inflicted by his mother – and these Defendants knew it when they drafted their fraudulent report and filed it with the juvenile court.

50.   On information and belief, the juvenile court accepted Defendants' fraudulent Detention Report into evidence, took the information contained in it as true, and ordered that the teens continue to be detained from their mother. In doing so, the juvenile court granted the County of Los Angeles discretion to place the children in whatever "placement" the County of Los Angeles deemed appropriate. Thus these Defendants, at all times, had broad discretion regarding where to place the teens. The juvenile court then ordered that the department obtain a mental health assessment of the children, particularly of Gael, and that he be provided necessary treatment and services.[1] As noted above, the boys' first placement was with the Padilla family.

51.   On May 22, 2019, Defendants Eboni Crowe and Adrian Hawkins Drafted and filed what is referred to as their Jurisdiction/Disposition Report. Defendant Eboni Crowe, on information and belief, in addition to being the family's case carrying

---

[1]Plaintiff, through her counsel, filed her Petition under California Welfare and Institutions Code §827 and §828 to obtain the confidential juvenile case files as defined under California Rules of Court, Rule 5.552 in December 2020. However, as of the date of the filing of this complaint, the juvenile court has not yet issued any orders on said petitions. Plaintiff will move to stay this case pending the juvenile court's release of said records. Alternatively, Plaintiff will seek an order from this Court directing the County of Los Angeles to release its records forthwith.

social worker also served in a dual capacity as the DI, or Dependency Investigator for purposes of creating and filing the Jurisdiction/Disposition Report. Pursuant to State Regulations and the County of Los Angeles Policies in place at the time, as the DI on the case it was Defendant Crowe's affirmative obligation to conduct a thorough and complete re-investigation of the allegations contained in the underlying Petition and Detention Report, which included the obligation to re-interview the witnesses identified in the Detention Report to ensure the accuracy of what they were reported in the Detention Report to have said, and to obtain a more thorough and complete understanding of the underlying issues that led the family to be before the juvenile court. Upon completion of her investigation, Defendant Crowe was supposed to honestly, accurately, and completely report her findings and information to the juvenile court, including all exculpatory information. Then, based on the new or engrossed information uncovered, it was Crow's job to make honest recommendations to the juvenile court regarding how best to deal with the child and/or the family.

52.  Defendant Adrian Hawkins, for her part, was Defendant Crowe's direct supervisor. It was Ms. Hawkins job to supervise and oversee Crowe's work, and to ensure the accuracy and completeness of Crowe's official report to the juvenile court. As part of her regular practice Hawkins would meet with Crowe in conference to go over the information discovered during Crowe's "re-investigation," and consult regarding what recommendations should be made to the juvenile court regarding the status of the family and the direction the case should take.

53.  In addition, because of her dual role in this particular case, on information and belief, Crowe and Hawkins were required, as part of their job duties, to ensure the continued safety and security of I.M. and Gael during their term in County of Los Angeles custody regardless of whether the children were reposed in a foster care home, or in a group home. In addition, Crowe and Hawkins, and County Worker

DOES 1-10, had an affirmative duty under the United States Constitution's Fourteenth Amendment and under state law to ensure that Gael and I.M. received adequate care and supervision, including adequate behavioral and mental health care during the time the teens were under the County of Los Angeles's supervision. In their Jurisdiction/Disposition Report, these Defendants failed to report to the juvenile court that the boys were rapidly decompensating in the Padilla home. In addition, Crowe and Hawkins suppressed from their report the fact that Gael was in need of mental/behavior health treatment including therapy to address his known anger and impulse control problems.

54. After the boys were placed in the Padilla home, Rachelle complained to Crowe that the boys were still not receiving the behavioral health services that they needed. Crowe did nothing to rectify the situation or otherwise ensure the boys received at least minimally adequate care and supervision from the County Defendants, and each of them, while they were reposed in the Padilla home.

– ***The Boys Are Removed From the Padilla Home Due to Gael's Behaviors; They are Placed with Tracy Pitchford, Who Leaves Them Unsupervised For Long Periods of Time***

55. In the Padilla home, the boys fought with each other frequently due to Gael's known anger issues, impulse control problems, and unresolved emotional issues.

56. While at the Padilla home the teenagers were not provided with minimally adequate care and/or supervision to meet their known needs. Specifically, Gael was not provided with therapy or any other necessary mental health services. The County Defendants, and each of them including Candice Brown and County Worker DOES 1-10, failed to ensure that Gael received the mental/behavioral healthcare services, therapy, and counseling that he required. Gael's aggressive behaviors continued unabated and in fact worsened over time. Rachelle complained even more fervently to Candice Brown, Eboni Crowe and other County Defendants on multiple occasions that Gael was not receiving adequate

care and that his behaviors were worsening. But, her complaints and concerns were repeatedly ignored. On information and belief, the Padillas made similar complaints after Gael and Ian had a fight, Gael kicked a door in the home and smashed a mirror. Finally, when the Padillas requested that both boys be removed from their home, County Defendants immediately did so.

57. At some point around July 1, 2019, the teenagers were removed from the Padilla home due to Gael's escalating behaviors and repeated violent outbursts. He frequently fought with his brother I.M., kicked doors, and broke things in the Padilla home. Despite the Padilla's pleas, and Rachelle's repeated requests that Gael receive necessary treatment, the County Defendants, and each of them, failed to provide Gael even minimally adequate behavioral or mental health care and/or treatment. The boys were placed with Tracy Pitchford.

58. A few weeks after the boys were placed with Tracy Pitchford, there was a fire in her home and the house burned down. Pitchford, with County of Los Angeles support and approval, moved into a motel in Chatsworth with all of her five foster children. Gael and I.M. had their own hotel room where they lived without adult supervision or oversight. During that period of time the boys had access to alcohol and drugs, and frequently posted pictures of their hotel parties on social media. Rachelle complained to both Pitchford and to Eboni Crowe about the lack of adequate supervision for Gael and I.M., but was ignored.

59. Gael's known behavioral/emotional problems persisted without much needed treatment being provided either by Pitchford or by the County of Los Angeles. In spite of Rachelle's continued complaints to Eboni Crowe, Adrian Hawkins, and County Worker DOES 1-10, no therapy was provided to Gael. Gael's negative and aggressive behaviors continued to increase to the point that Eboni Crowe, Adrian Hawkins, and County Worker DOES 1-10 decided to place Gael in a group home. I.M. was left in the care of Tracy Pitchford, and Gael was moved to New Concept Group Home, owned and operated by Defendant Humanistic Foundation, Inc.

60.     On the day Defendants Crowe, Hawkins, and County Worker DOES 1-10 decided to move Gael, Gael protested that he did not want to be separated from his brother I.M., his only familial support while in foster care. Rachelle also pleaded with these Defendants to refrain from separating the children and to refrain from placing Gael in a group home setting. She asked instead that Gael be placed either in a different foster placement or in a treatment center where he could get the therapeutic help he so desperately needed. She even requested that Gael be placed back with her so that she could provide him the mental/behavioral health care he needed – which to-date, the County of Los Angeles had failed to provide. These Defendants flatly denied all of her requests.

–       *I.M. And Gael Are Split up; Gael is Sent to A Group Home Where he is Exposed to Hard Drugs, Left Unsupervised for Long Periods of Time, and Denied His Necessary Behavioral and Mental Healthcare Needs*

61.     Gael was moved to the New Concept Group Home located in East Los Angeles and owned and operated by Defendant Humanistic Foundation, Inc. During his stay at New Concept Group Home Gael was frequently not transported to school. He complained frequently about being sent to school in dirty clothing. In addition, while at New Concept Group Home, Gael was exposed to drugs and openly encouraged to smoke marijuana and other drugs.

62.     The drug use/abuse at New Concept Group Home was open and notorious. At one point Gael boasted to his brother and friends who remained reposed with Traci Pitchford that "the staff at the group home are homies because they let me smoke drugs openly."

63.     Gael was not even provided with adequate nutrition. For example, during at least one visit to the group home, Rachelle witnessed that for dinner the children in the group home were fed a hot dog placed on an empty bun with no condiments or any other food served with the meal. When Rachelle questioned Gael, he responded, "yeah, that's the kind of food they feed us." On multiple occasions Gael ask

Rachelle to order food from Postmates for him to each because he was not allowed access to sufficient or adequate food by th group home staff. Rachelle had food delivered to Gael at the group home multiple times every week. When Rachelle complained to Eboni Crowe, Adrian Hawkins, and County Worker DOES 1-10 about the dismal living conditions at New Concepts Group Home, her complaints were ignored.

64.    While reposed at New Concept Group Home Gael's behaviors continued to devolve. He was permitted to leave the facility and would, at times, be gone for days at a time. When Gael went AWOL, nobody would inform Rachelle of the fact. On more than one occasion Rachelle called the group home to speak with Gael only to learn that he had gone AWOL and had not been seen or heard from for days.

65.    Rachelle was virtually paralyzed with anxiety over the way Gael was treated at New Concept Group Home. She would be calling the group home multiple times a day, filing reports with the CPS hotline, contacting Gael's social workers about his whereabouts, communicating with the wrap team frequently about her concerns regarding Gael's lack of supervision and adequate care – especially his behavioral and mental health care.

66.    Between the end of August and October, in spite of the fact that Defendants, and each of them knew of Gael's mental healthcare needs and in spite of the fact that the juvenile court had ordered that Gael receive such services, no arrangements were made for Gael to receive counseling or any other form of mental/behavioral health therapy or care.

67.    Rachelle herself inquired multiple times about setting up counseling, with the wrap coordinator, group home staff, Defendants Crowe, County Worker DOES 1-10, and Group Home DOES 1-10, yet nothing was done by any of them to get Gael the care he so desperately needed.

68.    On numerous occasions meetings were scheduled by the wrap coordinator, group

home staff, Defendants Crowe, County Worker DOES 1-10, and Group Home DOES 1-10, but while Rachelle was on the way to the meeting, these Defendants and each of them would call to inform her to cancel the meeting saying that Gael had not been in the home for days. Rachelle would request that the meeting go forward regardless so that those who were responsible for Gael's care, supervision, safety and security could be fully apprised of the situation and hear Rachelle's concerns. Every single time, her requests were denied and Gael was left to run the streets, become habituated to drugs, and go untreated.

69.   Finally in the second week of October after Gael had been missing for multiple days from the group home, he sent a text to Rachelle. She responded and convinced him to come to her house since he refused to return to the group home. At that time, Gael said that he had not slept in days. When he appeared at Rachelle's home he was gaunt and pale. He had lost a lot of weight. When Rachelle told Eboni Crowe that Gael had reached out to her and come home, Crowe responded in an haughty and angry manner that she would have Rachelle arrested if she didn't return Gael to the group home immediately. Under threat of arrest, at Crowe, Hawkins, and County Worker DOES 1-10 instruction, Gael was sent back to the group home. During this period of time Gael sent Rachelle desperate texts pleading for help. For example, in one such text he wrote "I hate Eboni, she is never there for me when I need her." Three days after his forced return to the group home Gael went missing again. When Rachelle found out she again filed a report with the Gorup Home staff, Group Home DOES 1-10, the CPS hotline, Eboni Crowe, and County Worker DOES 1-10, and was again ignored.

70.   Before entering the County's custody, Gael did not have a drug dependency problem or addiction, and had a strong academic interest, especially in biology. Once he entered the County's custody and so called "care," Gael's teachers noted his change in attitude toward school, specifically that he had a lack of academic drive. By August 2019, while under the County Defendants' and Group Home

Defendants' "care and supervision," Gael began habitually engaging in "hard" drug use, including pharmaceutical-grade oxycontin and other street drugs.

71. Defendants Los Angeles County and The Humanistic Foundation, Inc., and each of them, failed to provide adequate monitoring, protection, and supervision to Gael. Each of the named County and Group Home affiliated defendants, including but not limited to the Group Home DOES and the County Worker Does failed in their duties to monitor Gael and provide notice to Rachelle and/or the Juvenile Court about Gael's changes in circumstances while he was in their custody.

72. On information and belief, Defendants Eboni Crowe, Adrian Hawkins, and County Worker DOES 1-10 actively suppressed information related to Gael's declining mental/behavioral condition form the juvenile court by refraining from reporting it in the many reports they filed with the juvenile court. Instead of "caring for" and "supervising" Gael as they were required to do, the ignored his needs and left him to run the streets and to become addicted to hard drugs. At a time when they were under court orders to provide Gael treatment for his mental, emotional, and behavioral conditions, they ignored his needs, kept him from the one person in his life who truly cared for him, and allowed his condition to degrade to the point that he was nearly irretrievable. 0

73. Between the end of August 2019 and October 2019, Rachelle repeatedly begged the County Defendants and the Group Home Defendants to set up counseling for Gael. Rachelle's requests for required and necessary services for Gael were always refused.

– ***Gael is Returned to Rachelle's Care But Continues to be Supervised by Los Angeles County; The County Defendants Refrain From Informing Rachelle About the Full Extent of Gael's Drug Problems***

74. Gael's drug abuse, which he developed under the County Defendants and Group Home Defendants' "care and supervision" and other reckless behaviors which he was permitted to engage in by these Defendants was left completely unchecked

and untreated for several months until November 2019, when the County Defendants placed Gael back with his mother. Though still under the County's jurisdiction and supervision, the County failed to notify Rachelle of Gael's known addiction, newly acquired additional behavioral issues, or then current mental state. Regardless, by this point, the damage to Gael had already been done.

75. When Gael was removed from Rachelle's care, he was not using drugs nor had his mental health devolved to such an extent that he required inpatient therapy. By the time he was returned to Rachelle's care he was a hot mess. He had been exposed to drugs while under DCFS supervision in foster care and group homes and become addicted to them. But, for whatever reason, when Gael came back to live with Rachelle in November 2019, Defendant Crowe and County Worker DOES 1-10, refrained from informing Rachelle of the full extent of Gael's drug problem. She was only made aware of Gael's marijuana use.

76. Rachelle soon realized that Gael's behavior and habits had changed dramatically from when he had been removed from her home. Shortly after Gael's placement in her home, Rachelle notified Defendant Crowe and County Worker DOES 1-10, about Gael's drug addiction issues which were new and previously unheard of. She requested services in the form of assistance and referrals to resources to help Gael. In spite of this, the County Defendants, and each of them, refused to provide timely assistance of any kind to address these issues and Gael's risky behaviors continued unabated.

77. Because Gael remained under the County's control, care, supervision and custody even while placed in Rachelle's home, it was the County Defendants' duty to ensure Gael received necessary services – which the County completely and totally failed and/or refused to do.

78. In December 2019, Rachelle, Gael, and Defendant Crowe had a meeting at Gael's high school to address some of Gael's troubling behaviors. Gael showed up to this meeting high and told everyone in the meeting, including Defendant Crowe, about

his drug usage. Instead of immediately taking steps to get him the care he needed, Crowe accused Gael of "manipulating the system to avoid consequences." County Defendants including Crowe took no measures to correct Gael's behavior even though they were required to provide care and supportive services necessary to address Gael's issues. This was just one more piece of the repeating pattern displayed by the County Defendants, and each of them, since May 1, 2019, when Defendant Brown first took Gael into custody. His known needs were repeatedly and consistently ignored.

79.    On January 14, 2020, Gael suffered a meltdown and confided in Rachelle that, in addition to marijuana and oxycontin, he had also started taking methamphetamine while at Ne Concept Group Home. Rachelle immediately informed the County Defendants, and each of them, and requested that the County provide Gael necessary care and services. While Rachelle believed this to require immediate care, the County Defendants, including but not limited to Eboni Crowe, refused to provide her with any services including emergency services – as required by the circumstance and situation. Rachelle reached out to the WRAP Team and County Worker DOES 1-10, inclusive. They told Rachelle not to seek emergency services for Gael, and instead to wait for the next WRAP meeting to address the issue.

80.    Later in January 2020, Rachelle again asked the County Defendants, and each of them, to either provide services or place Gael in rehabilitation. Once again, Rachelle's reasonable requests were refused. No services were provided and Gael was not placed in rehabilitation or provided with any other necessary services. During the period of time that Gael was in the County's jurisdiction and control, Gael's drug dependency continued unabated and worsened.

81.    Defendants failed to provide the required rehabilitation, monitoring, services, as well as adequate supervision despite having been notified of Gael's exacerbated and declining condition on multiple occasions. Between March 2020 and August 2020, the County Defendants refused to provide Gael necessary services to treat

the condition the County Defendants caused. Rachelle addressed Gael's issues as best as she could, as a single mother of two teens the best that she could, without any County support – and for a time, Gael showed improvement. But, when Gael tested positive for cocaine and marijuana on August 16, 2020. Rachelle again asked the County Defendants, and each of them, for much needed support and services.

82.   On September 13, 2020, Gael went AWOL from Rachelle's home. When he returned, Rachelle immediately tested Gael for drugs. Gael came back positive for opiates and marijuana. Again, Rachelle notified the County Defendants, and each of them, about Gael's continued drug use and again requested County help to solve the problem the County caused. Again, Rachelle's reasonable requests for help were refused.

83.   On October 14, 2020, Defendant Crowe had one final opportunity to address Gael's ongoing drug addiction issues when she visited Gael for a face to face meeting. During that meeting, Rachelle informed Crowe about Gael's recent positive drug test. Crowe failed to address Gael's ongoing issues and refused to provide support or services to address the problem the County had caused. Predictably, Gael died of a drug overdose on October 15, 2020 – the very issue the County and Group Home Defendants allowed to develop and then failed to address for months – in spite of their creation of the problem and knowledge of it killed this child.

84.   In summary, the County Defendants, and each of them, (1) failed to reasonably assess and/or adequately place Gael with an appropriate caregiver, (2) failed to adequately assess and/or supervise Gael after placing him in a group home, (3) allowed Gael to remain in the group home in spite of their knowledge of the inadequacy of the placement (4) allowed Gael to remain in such an unsafe placement where he was permitted to develop an addiction to narcotics, (5) failed to provide necessary medical, behavioral and mental health services for Gael over

the course of several months and/or (5) failed to keep Rachelle and the Juvenile Court apprised of Gael's declining condition while in placement, i.e., the fact that he was becoming/became addicted to drugs and was consistently engaging in dangerous behaviors. This conduct, or rather misconduct by these defendants was a substantial factor in causing Gael's wrongful death while in the County's "care and supervision."

85. As a result of the foregoing acts and omissions of Defendants, and each of them, Rachelle  was unjustly and unlawfully separated from her daughter. As a direct and proximate result of the acts and/or omissions of Defendants, and each of them, Rachelle  suffered and continues to suffer economic and non-economic harm and injury as according to proof at trial.

**FIRST CLAIM FOR RELIEF**
Violations of Constitutional Rights U.S.C. 1983
Unwarranted Seizure
By Plaintiff Rachelle Gomez, both individually
and as Successor in interest of Gael Martinez
(as against Defendants Candice Brown, Doris Lemieux, County Worker DOES 1-10,
Officer DOE Lovell, Officer U. Mendoza, and Police Officer DOES 1-10)

86. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if set forth in full.

87. At all relevant times Defendants Candice Brown, Doris Lemieux, County Worker DOES 1-10 were acting within the course and scope of their duties as County of Los Angeles employees and under color of law.

88. At all relevant times Defendants Officer DOE Lovell, Officer U. Mendoza, and Police Officer DOES 1-10 were acting within the course and scope of their duties as City of Beverly Hills employees and under color of law.

89. At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was so very "clearly established" that any reasonable police officer and/or government social services agent in Defendants' situation would know it is unlawful to seize a child

from the care, custody, and control of its parents or to question, threaten the child's parents, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant or other similar court order authorizing the government worker and/or police officer to do so. Furthermore, any such reasonable police office and/or government social worker would also know that to do these things, without a court order, would constitute a violation of the parent's and child's well-elaborated constitutional right to live together without governmental interference - which rights are protected under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

90.   Defendants, and each of them, at all times relevant herein, had an affirmative duty and obligation to recognize, acknowledge, and respect both Ms. Gomez's rights and Gael's, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate the rights guaranteed under the United States Constitution, including, without limitation, the protection of familial rights, association rights, the right to privacy, family integrity, and the right to familial relations.

91.   Defendants, and each of them, at all relevant times herein were acting under color of state law when they jointly acted, or knew and agreed and thereby conspired, to violate Ms. Gomez's and Gael's constitutional rights by, but not limited to, removing, detaining, and continuing to detain Gael from the care, custody, and control of his mother, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order - thereby violating Ms. Gomez's and Gael's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

92.   Prior to seizing Gael, these Defendants and each of them, failed to conduct a reasonable investigation which included interviewing all relevant witnesses.

93.   Prior to seizing Gael, these Defendants, and each of them, failed to even attempt to determine whether less-intrusive alternative means existed to ensure the safety of

1    Gael in his mother's care.

2    94.   None of these Defendants sought or obtained a protective custody warrant - or any
3          other type of warrant or court order, prior to seizing Gael from his mother and
4          family home. These Defendants, and each of them, jointly acted or conspired to
5          seize the children, as described above, knowing that no warrant authorizing Gael's
6          and/or I.M.'s seizure had been issued - and, knowing that there was no specific
7          articulable evidence to support even a reasonable suspicion that either Gael or I.M.
8          were in immediate danger of severe bodily injury or death at the hands of
9          Rachelle, their mother, in the short time it would have taken to obtain a warrant.
10         Moreover, at the time they seized Gael and I.M., these Defendants, and each of
11         them, knew that there were obvious and reasonable less-intrusive alternatives to
12         seizure of the children. Indeed, Plaintiff is informed and believes and thereon
13         alleges that Defendants, and each of them, purposefully, knowingly, and/or
14         recklessly refrained from seeking a warrant, in knowing contravention and
15         derogation of Ms. Gomez's, Gael's, and I.M.'s clearly established rights to due
16         process and familial association.

17   95.   At all times, these Defendants, and each of them, knew that there was no court
18         order authorizing either Gael or I.M.'s seizure, either from school or later at the
19         police station. As noted above, these Defendants, and each of them, also knew that
20         exigent circumstances did not exist, and that Ms. Gomez did not willingly consent
21         to Gael or I.M.'s seizure and continued detention.

22   96.   As a direct and proximate result of these Defendants' misconduct, Ms. Gomez and
23         Gael have suffered, and at least as to Ms. Gomez will continue to suffer, general
24         and special damages according to proof at trial, including but not limited to
25         physical and/or mental anxiety, emotional distress, pain and anguish, among other
26         things.

27   97.   Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of
28         these Defendants' misconduct as herein alleged and described, Plaintiff is entitled

1    to recover, and shall seek, punitive damages against these individual Defendants,

2    and each of them, in accordance with law and subject to proof at trial.

3    **SECOND CLAIM FOR RELIEF**
Violations of Constitutional Rights U.S.C. 1983
4    Deception in the Presentation of Evidence
By Plaintiff Rachelle Gomez, both individually
5    and as Successor in interest of Gael Martinez
(as against Defendants Candice Brown, Doris Lemieux, Eboni Crowe,
6    Adrian Hawkins, an County Worker DOES 1-10)

7    98.   Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as

8          if set forth in full.

9    99.   At all times relevant herein, there existed a clearly established due process right of

10         individuals, including but not limited to Ms. Gomez and Gael, not to be subjected

11         to false accusations and/or reports by government officials, including the

12         deliberate presentation of false or perjured evidence, and/or by the suppression of

13         exculpatory information in court proceedings or in documents submitted with

14         recommendations or requests made to the court. Any reasonable social services

15         agent and/or government agent in these Defendants' situation would know that it

16         is a fundamental due process violation to lie, exaggerate, fabricate evidence,

17         and/or suppress material exculpatory evidence and/or refrain from reporting

18         important information to the juvenile court in court reports and other documents

19         filed with the Juvenile Court.

20   100.  In fact, these Defendants, and each of them, had the affirmative and self-evident

21         duty and obligation to be truthful, honest, accurate, and complete in petitions,

22         reports, and documents submitted and/or presented to the juvenile court which had

23         the power to adjudicate substantial rights, including parental rights. These

24         Defendants also had an affirmative obligation and duty to refrain from using

25         improper, unlawful, and deceptive means to obtain judicial orders sustaining

26         and/or adopting social worker recommendations or otherwise seeking to denigrate

27         Plaintiffs' well-established liberty interests in familial integrity and continued

28         familial association.

101.  At all relevant times, these Defendants, and each of them, were acting under color of law, and within the course and scope of their official duties when they drafted, created, approved, and/or filed documents with the juvenile court.

102.  These Defendants, and each of them, either singularly or jointly acted and/or agreed to deliberately and/or recklessly present false statements and information, and/or omitted known exculpatory material information when creating their various documents for presentation to the Juvenile Court, as alleged herein above. This conduct, i.e., Defendants' knowingly deceptive presentation of "evidence" to the Juvenile Court, caused Gael's continued and prolonged detention from Ms. Gomez's care, custody, and/or control - and ultimately left Gael in the unfortunate condition of becoming a drug addicted, often times homeless, runaway teen who ultimately, and predictably died of a drug overdose.

103.  Had it not been for Defendants' deliberate false statements and/or omissions of important material in their reports filed in the juvenile court, the juvenile court would not have adopted Defendants' recommended findings and Gael's continued and prolonged detention would not have occurred. In addition, had these Defendants, and each of them accurately reported Gael's circumstances in custody and declining mental/behavioral health state, the court would have and could have ordered additional necessary services to assist Gael and his family to recover from the detriment caused by the County Defendants' failure to adequately care for and supervise Gael.

104.  As a direct and proximate result of these Defendants' misconduct, Ms. Gomez and Gael have suffered, and at least as to Ms. Gomez, will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical manifestations of emotional distress, and/or mental anxiety and anguish, among other things.

105.  Due to the malicious, wrongful and despicable nature of these Defendants' misconduct, as herein alleged and described above, Ms. Gomez and Gael are

1  entitled to recover punitive damages against these individual Defendants, and each

2  of them, in accordance with law and subject to proof at trial.

3  ### THIRD CLAIM FOR RELIEF
Violations of Constitutional Rights U.S.C. 1983

4  Failure to Provide Dependent Minor Continued Safety and Security and Even
Minimally-Adequate Mental/Behavioral Health Care

5  By Plaintiff Rachelle Gomez, both individually
and as Successor in interest of Gael Martinez

6  as against Defendants Candice Brown, Doris Lemieux, Eboni Crowe,
Adrian Hawkins, County Worker DOES 1-10,

7  Humanistic Foundation, Inc., and Group Home DOES 1-10.)

8
106.  Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as

9  if set forth in full.

10  ### COUNT 1:

11
107.  At all relevant times alleged herein, Defendants Defendants Candice Brown, Doris

12  Lemieux, Eboni Crowe, Adrian Hawkins, County Worker DOES 1-10 were acting

13  within the course and scope of their duties as Los Angeles County employees and

14  under color of law.

15
108.  Once the state assumes wardship of a child, the state owes the child, as part of that

16  person's protected liberty interest, reasonable safety and minimally adequate care .

17  . . ." *Lipscomb by and through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir.

18  1992).  The Constitution's Fourteenth Amendment protects a foster child's interest

19  in social worker supervision and protection. *Tamas v. Dep't of Soc. & Health*

20  *Servs.*, 630 F.3d 833, 842-843 (9th Cir. 2010). Thus, once the government

21  assumes custody and care of a child, it owes that child a duty to provide

22  reasonable safety and security, and at least minimally-adequate care, including but

23  not limited to mental and behavioral health care.

24
109.  Gael was a ward of Los Angeles County once he was ordered to continue to be

25  detained in the County's care, custody, and control and was therefore owed the

26  duties and protections set out above. See, e.g., *Garcia v. Cty. of San Diego*, No.

27  15-CV-189 JLS (NLS), 2018 U.S. Dist. LEXIS 101718, at *36 (S.D. Cal. June 18,

28

2018). By virtue of his status as a ward of Los Angeles County, Gael held protected liberty interests in being shielded from harm inflicted in foster care and enjoyed a special relationship with the Los Angeles County.

110.   At all times applicable herein, said liberty interest and duties of government social workers and/or other agents was so clearly established that any reasonable social worker similarly-situated with these Defendants would know it was a violation of Gael's fundamental rights to fail to provide for his continued safety and security and to fail to provide him with at least minimally-adequate mental/behavioral health care.

111.   In addition, Plaintiff alleges that Defendants County of Los Angeles and these individual Defendants were associated with the implementation of a foster care program designed to place, protect and care for minors subject to the jurisdiction of the juvenile court of the County of Los Angeles. Plaintiff alleges that Defendants County of Los Angeles, Candice Brown, Doris Lemieux, Eboni Crowe, Adrian Hawkins, and County Worker DOES 1-10 regulate and are responsible for the monitoring of foster children placed in the care of the Los Angeles County DCFS by the Juvenile Court.

112.   Plaintiff further alleges that Defendants Los Angeles County, Candice Brown, Doris Lemieux, Eboni Crowe, Adrian Hawkins, County Worker DOES 1-10 have and had duties to implement policies and programs designed, among other things, to protect the legal and human rights of children receiving services from community care facilities and to ensure that the facilities so established maintain proper licensure or certification and are adequate, safe and sanitary.

113.   During the time Gael remained in the care, custody, and control of Los Angeles County, Los Angeles County, Candice Brown, Doris Lemieux, Eboni Crowe, Adrian Hawkins, County Worker DOES 1-10 were deliberately indifferent to Gael's obvious and known mental/behavioral health care needs. In spite of their legal obligation to meet and address those needs these Defendants, and each of

them, knowingly and with deliberation failed to do so.

114. Specifically, once Defendants successfully executed Gael's removal from the protective care of her mother, Defendants, and each of them, acted with a reckless disregard for and deliberate indifference to Gael's known rights and needs by failing to provide for and ensure Gael's continued safety and security and by failing to provide at least minimally- adequate continued care for Gael, including mental/behavioral health care even though they had been notified of his needs and proposed treatment.

115. Contrary to their obligations to him, Defendants placed and maintained Gael in a situation where it was reasonably foreseeable that Gael would not receive the essential mental/behavioral health services needed to address his known emotional disturbance - and predictably, he did not receive such care. It was also reasonably foreseeable that left untreated or inadequately treated, Gael would decompensate to the point of his exhibited self-destructive behaviors, which ultimately led to his condition as a runaway, oftentimes homeless, drug addicted teen - all while under the "care and supervision" of these defendants, including Los Angeles County.

116. Defendants, in spite of their knowledge of his declining condition, maintained Gael in inappropriate and inadequate placements for a prolonged period of time knowing that he was not receiving necessary or appropriate mental/behavioral health services to address his emotional disturbance and/or mental/behavioral healthcare needs.

117. These Defendants, and each of them, knew, or with the exercise of reasonable care should have known, that Gael Martinez presented with a high risk of foreseeably engaging in self-destructive and self-endangering behaviors, including running away, and pervasive drug use if not provided with appropriate care, supervision, and treatment. Despite this, these Defendants, and each of them, (1) failed to reasonably and/or adequately investigate the allegations, (2) ignored and failed to inform the court of mitigating and exculpatory facts, (3) allowed Gael to remain in

inadequate and inappropriate care without needed and essential mental/behavioral health treatment, and (4) failed to adequately supervise Gael while in placement to ensure his continued safety and well being.

118.   As a direct and proximate result of Defendants' acts and/or omissions, Gael suffered injuries as alleged herein, including but not limited to injuries to his person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, damage to his reputation and personal relations, and other general and special damages in an amount to be ascertained according to proof at trial.

119.   Due to the malicious and knowing violation of Gael's rights and the wrongful and despicable nature of these Defendants' misconduct, as herein alleged and described above, Ms. Gomez and Gael are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

**COUNT 2:**

120.   On information and belief, the County and Humanistic Foundation, Inc. entered into a contract to provide child care and social services to children in the County's custody. On information and belief, the County and Humanistic Foundation, Inc. collaborate to provide child care and social services to children in the County's custody. On information and belief, at all relevant times, Humanistic Foundation, Inc.'s agents and employees operated pursuant to this child care contract.

121.   Humanistic Foundation, Inc.'s agents and employees - including Group Home DOES 1-10, jointly and willfully collaborated with the County of Los Angeles to provide child care and social services to Gael.

122.   Pursuant to contract, Humanistic Foundation, Inc.'s agents and employees including Group Home DOES 1-10, and each of them, assumed custody and care of Gael. As such, each of these Defendants enjoyed a special relationship with Gael.

123. Moreover, each of these Defendants were charged with the affirmative obligation, that is, the duty to ensure Gael's safety, protection, and continued security as well as to provide him with minimally adequate care – including mental/behavioral healthcare.

124. These Defendants, and each of them knew that Gael was prone to angry outburst, expressed harmful behaviors, and exhibited extreme impulse control and behavioral problems, was incapable of making safe and independent decisions, was prone to frequent AWOL and/or runaway behaviors and engaged in illicit drug use while in these Defendants' custody and care. It was also reasonably foreseeable that left untreated or inadequately treated and unsupervised, Gael would decompensate to the point of his exhibited self-destructive behaviors, which ultimately led to his condition as a runaway, sometimes homeless, drug addicted teen.

125. These Defendants, and each of them, knew that Gael required a higher level of care and supervision to protect his safety and well being, and to address his mental/behavioral health issues.

126. Nonetheless, these Defendants refused and/or failed to supervise Gael, implement or set up safeguards to protect Gael, provide minimally adequate care, and supervision for Gael, and/or ensure that Gael did not AWOL from their facility and did not use and/or become addicted to drugs in their facility.

127. These Defendants maintained Gael in inappropriate and inadequate placements for a prolonged period of time knowing that he was not receiving necessary or appropriate mental/behavioral health services to address his emotional disturbance and/or mental/behavioral healthcare needs.

128. Gael would not have been exposed to or become addicted to illicit drugs if these Defendants, and each of them, had provided adequate protection, supervision, safety, and security.

129. These Defendants' conduct was a substantial factor in Gael suffering harm. As a

1  direct and proximate result of these Defendants' conduct, Gael's constitutional

2  rights to adequate supervision, safety, security and at least minimally adequate

3  care were violated; and, Plaintiff suffered damages thereby, as according to proof

4  at trial.

5  130. These Defendants' conduct as herein alleged was intentional and/or with a

6  conscious disregard for Gael's rights. As a result of this misconduct, Plaintiff is

7  entitled to recover punitive damages against these individual defendants.

8  **FOURTH CLAIM FOR RELIEF**
*Monell-Related Claims*
9  By Plaintiff Rachelle Gomez, both individually
and as Successor in interest of Gael Massey
10  (As Against Defendants Los Angeles County and
Humanistic Foundation, Inc., inclusive)

11

12  131. Plaintiff hereby incorporates by reference all other paragraphs of

13  this Complaint as if set forth in full.

14  **COUNT 1:**

15  132. Defendant Los Angeles County, including through its child welfare services

16  agency DCFS is a "person" within the meaning of 42 U.S.C. § 1983 and subject to

17  *Monell* liability under *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

18  Defendants, and each of them, acted under color of state law when committing the

19  acts alleged herein, in violation of Plaintiff's rights.

20  133. Defendant Los Angeles County, including through its entity DCFS and those

21  individuals in their official capacities who had supervisory and/or policy making

22  authority, had a duty to Plaintiff Rachelle Gomez and Gael Massey at all times to

23  establish, implement and follow policies, procedures, customs and/or practices

24  (hereinafter referred to as "policy" or "policies") which confirm and provide the

25  protections guaranteed under the United States Constitution, including those under

26  the Fourteenth Amendment, to include without limitation, liberty interests in

27  reasonable safety and minimally-adequate care, and the right to substantive and

28  procedural due process which includes the right to remain free of unwarranted

1    seizures and the right to remain free of false accusations in court proceedings.

2  134.  Said Defendants also had a duty to use reasonable care, including through the

3         promulgation and implementation of procedures, policies and training, to ensure

4         that their agents did not alienate Gael from his mother, did not wrongfully and

5         without just cause remove Gael from the custody of his mother, did not

6         misrepresent facts to the court,  and to select, assign, supervise, train, control and

7         review the activities of all their agents, officers, employees and those acting under

8         them, including within the DCFS, so as to protect the constitutional rights of

9         persons with whom its agents regularly come into contact, including Ms. Gomez

10        and Gael, in order to avoid violation of their constitutional rights, including Gael's

11        rights to continued supervision, safety, security, and care during the time he

12        remained in the County's custody.

13 135.  Defendant Los Angeles County, including through its entity DCFS, established

14        and/or followed procedures, customs, and/or practices which were the moving

15        force behind the violations of Plaintiff's and Gael's constitutional rights, including

16        those under the First, Fourth, and Fourteenth Amendment, by, but not limited to:

17              a.    the custom and/or practice of failing to properly investigate

18                    allegations of neglect or abuse before detaining minors from the

19                    custody of their parents;

20              b.    the custom and/or practice of utilizing coercion and intimidation to

21                    induce parents to sign so-called "safety plans" relinquishing control

22                    of their children, as a workaround to the Constitution's warrant

23                    requirements in order to expeditiously seize children;

24              c.    the custom and/or practice of maintaining foster children in

25                    placement in community care facilities known or suspected to be

26                    inadequate to the needs of dependents of the court, including the

27                    needs of minors with special needs such as the need to address

28                    mental/behavioral health conditions;

d.   the custom and/or practice of maintaining foster children in placement in community care facilities known or suspected to provide inadequate supervision and care for children in said placements and to allow and/or tacitly permit and/or turn blind eye to permissive drug use in said facilities by the minor residents there;

e.   the custom and/or practice of presenting false or incomplete information to the court to accomplish and effectuate the continued detention of minors from the custody of their parents when there is no true and legitimate basis to do so;

f.   the custom and/or practice of failing to provide even minimally-adequate care, including mental/behavioral health care to children in county custody who have severe mental/behavioral health needs such as those of Gael here;

g.   by acting with deliberate indifference in implementing a practice of inadequate training and/or supervision and/or by failing to train and/or supervise and/or discipline its officers, agents and employees, in providing the constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendment, when performing actions related to the placement of foster children and the investigation and reporting of child neglect and abuse, and the provision of reasonably-adequate care, including but not limited to mental/behavioral health care.

This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.

136.   Defendant Los Angeles County, including by and through its entity DCFS and its policymaking officials, breached its duties and obligations to Plaintiff and to Gael

by, but not limited to, deliberately and indifferently failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting these Defendants, and each of them, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected foster children and their parents, including Plaintiff Rachelle Gomez and Gael Martinez.

137. Defendant Los Angeles County knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiff and Gael to be injured and damaged by Los Angeles County's wrongful policies, or deliberate lack thereof, and was deliberately indifferent to the risk of such injury or harm. The aforementioned breaches and failures of Los Angeles County occurred in contravention of public policy and their legal duties and obligations to Plaintiff.

138. The above actions and/or inactions, namely the customs, practices, and/or procedures of Defendant Los Angeles County, were the moving force behind, and direct and proximate cause of Plaintiff's and Gael's injuries, as alleged herein. As a result, Plaintiff and Gael have sustained general and special damages to an extent and in an amount to be proven at trial.

**COUNT 2:**

139. The above listed constitutional mandates apply equally to government and to those private persons who are willful or voluntary participants with the government in providing child care and social services. See, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

140. On information and belief, the County and Humanistic Foundation, Inc. entered into a written contract for Humanistic Foundation, Inc. to provide child care and

social services on the County's behalf. On information and belief, the County pays Humanistic Foundation, Inc. money to provide these services. On information and belief, at all relevant times, Humanistic Foundation, Inc. operated pursuant to this child care and social services agreement.

141. On information and belief, pursuant to this written contract, Humanistic Foundation, Inc. accepted full responsibility for the acts or omissions of its agents, subcontractors, foster care providers, and/or of persons either directly or indirectly employed by Humanistic Foundation, Inc.

142. The County and Humanistic Foundation, Inc. entered into a written contract for Humanistic Foundation, Inc. to specifically provide child care and social services to Gael. The County paid Humanistic Foundation, Inc. for Gael's care - including supervision and social services including the arrangement for therapeutic services. At all relevant times, Humanistic Foundation, Inc. operated pursuant to this child care and social services agreement.

143. Humanistic Foundation, Inc. and Group Home DOE Employees, and each of them, voluntarily and willfully collaborated with the County of Los Angeles to provide supervision and child care and social services to Gael.

144. Based on the duties charged to Humanistic Foundation, Inc. and its agents and/or employees, including but not limited to the Group Home DOE Employees, Humanistic Foundation, Inc.'s policymaking officials knew or should have known of the need to establish such customs, policies, and practices as were required to protect the aforementioned constitutional rights of children with whom the Humanistic Foundation, Inc. and its agents and/or employees regularly came into contact - and to adequately train its employees, and/or agents.

145. At the time of the underlying events, the regularly established policies, customs, and/or practices of the Humanistic Foundation, Inc., that were followed, adhered to, complied with, and carried out by their employees, agents, and contractors, were the moving force that caused the violations of the constitutional rights of

Plaintiff, including but not limited to the following:

a.   the custom and/or practice of failing to provide even minimally-adequate care, including mental/behavioral health care to children in county custody reposed in this Defendant's facilities, who have severe mental/behavioral health needs such as those of Gael;

b.   the custom and/or practice of not reporting and not taking steps necessary or setting up safeguards to stop or attempt to stop a child's imminent plan to AWOL and/or repeated and habitual AWOL behaviors;

c.   the custom and/or practice of not providing sufficient supervision or adequate care to a child that is prone to self harm, violent out bursts, impulse control problems, does not make safe and independent decisions, and/or openly uses illicit drugs on facility grounds;

d.   the custom and/or practice of not requiring its agents and/or employees to intervening to stop or attempt to stop a child's imminent plan to AWOL and/or use of illicit drugs on facility grounds;

e.   by acting with deliberate indifference in implementing a practice of inadequate training and/or supervision and/or by failing to train and/or supervise its officers, agents and employees, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the care and supervision of foster children, and the provision of reasonably-adequate care, including but not limited to mental/behavioral health care, safety and continued security.

This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiff may seek leave to amend this pleading as more information becomes available.

146. When These Defendants failed to protect Gael from harm and failed to provide reasonable safety, security, and minimally adequate care and supervision, they were acting pursuant to and in accordance with Humanistic Foundation, Inc.'s regularly established customs and practices.

147. Humanistic Foundation, Inc. never investigated or disciplined the Group Home DOE Employees, for failing to supervise Gael and/or protect him from harm. Nor were the Group Home DOE Employees ever disciplined or otherwise investigated for failing to provide Gael with adequate supervision, reasonable safety and security, or minimally adequate care. Humanistic Foundation, Inc. does not discipline its agents and/or employees for constitutional violations or failure to protect and/or supervise foster children.

148. Humanistic Foundation, Inc. considered and examined the Group Home DOE Employees, acts and conduct involving Gael, and ratified and/or approved such acts and conduct.

149. Humanistic Foundation, Inc.'s custom, practices, policies, and/or failure to train its employees and/or agents on these established constitutional rights was a substantial factor in causing Gael's harm. Without adequate training, These Defendants, were unfamiliar with and oblivious to Gael's rights. As a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven separately at trial.

**FIFTH CLAIM FOR RELIEF**
For Wrongful Death - CCP §377.60
By Plaintiff Rachell Gomez, individually
(As Against All Defendants, with the exception of the City Defendants)

150. Plaintiff hereby incorporates by reference all of the preceding paragraphs of this Complaint as if set forth in full.

151. As a direct and indirect result of the acts and omissions of these Defendants, and each of them, as herein alleged, Gael Martinez sustained severe and serious injuries resulting in his death.

152. As a direct and legal result of the conduct of these Defendants, and each of them, and of the death of Gael Martinez, Plaintiff Rachelle Gomez has suffered both special and general damages, including but not limited to funeral and burial expenses and loss of the society, companionship, comfort and support of her son Gael, in an amount to be shown according to proof.

**SIXTH CLAIM FOR RELIEF**
For Breach of Mandatory Duties
By Plaintiff Rachelle Gomez, both individually
and as Successor in interest of Gael Martinez
(As Against All County Defendants)

153. Plaintiff hereby refers to, incorporates by reference, and realleges all othis paragraphs of this Complaint as if set forth in full.

154. Plaintiff alleges on information and belief that on and prior to May 1, 2019 through and including October 15, 2020, all of the County Defendants, and each of them continuously violated mandatory duties including, but not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code §16501 and as set forth in the Los Angeles County Department of Children and Family Services (DCFS) Handbook. Plaintiff alleges that specific statutes, regulations and policies violated by Defendants include, but are not limited to, those requiring intake and investigation as set forth in Regulation 31-125 and the requirement to make necessary collateral contacts with each person having knowledge of the condition of each child that is the subject of an allegation. Defendants violated Regulation 31-135 by not ensuring authority to remove Gael inasmuch as the removal was accomplished through coercion and intimidation. Defendants further violated Regulation 31-135 by not making and/or documenting pre-placement preventative efforts to avoid detention. Defendants violated Regulation 31-137 by failing to provide needed transitional medical and mental health treatment to Gael. Defendants violated Regulation 31-201 through failure to complete an adequate assessment of Gael's needs and failing to develop

an appropriate case plan to address Gael's needs and by failing to implement even the inadequate case plan that was eventually developed. Defendants failed to gather and evaluate information relevant to the case situation to appraise case services needs. Defendants failed to inform Gael's parents of authorized visitation and failed to facilitate visitation with Gael's parents. Defendants violated Regulation 31-205 by failing to properly document an assessment of Gael. Defendants violated Regulation 31-206 by failing to properly document an adequate case plan for Gael. Defendants violated Regulations 31- 210 and/or 31-215 by failing to comply with the case plan time frames and administrative requirements and failed to complete a case plan within 30 calendar days of Gael's removal as required. Defendants violated Regulations 31-225 and/or 31-230 by failing to update case plan documentation.

155.   In addition, Defendants violated Regulation 31-310 by failing to monitor Gael's mental and emotional needs and condition and by failing to provide services appropriate to meet those needs and by failing to assist Gael's parents to understand agency procedures and orders of the court. Defendants violated Regulation 31-315 by failing to maintain continuity of mental health care for Gael despite actual knowledge of his severe emotional disturbance and desperate need for continuity of care. Defendants violated Regulation 31-320 by not complying with the social worker contact requirements with Gael. Defendants violated Regulation 31-325 by not complying with the social worker contact requirements with Gael's parents. Defendants violated Regulation 31-330 by not complying with the social worker contact requirements with the out-of-home care providers. Defendants violated Regulation 31-335 by failing to comply with the social worker contact requirements with othis service providers. Defendants' placement of Gael in facilities inadequately trained and not capable of meeting his needs and providing an environment suitable and appropriate to meet Gael's needs violates Regulations 31-401 through 31-445 of the CDSS Manual of Policies and

1    Procedures by failing to fulfill the social worker responsibilities for placement.

2    156.   Other statutes, regulations and policies violated include those set forth in Section 4
3    of the CFS Handbook pertaining to assessment and placement coordination to
4    ensure the safety and well-being of Gael, California Penal Code §§11166, et seq.
5    by failing to report known and/or suspected neglect and/or abuse of Gael,
6    Regulations 31-320 and 31-330 of the CDSS Manual of Policies and Procedures
7    by failing to adequately conduct face-to-face contacts with Gael and the caregiver,
8    Regulation 31-405 of the CDSS Manual of Policies and Procedures by failing to
9    fulfill the social worker responsibilities for placement, Regulation 31-420 of the
10    CDSS Manual of Policies and Procedures by failing to adhise to placement
11    responsibilities set forth thisein, and Regulation 31-501 of the CDSS Manual of
12    Policies and Procedures by failing to report and/or properly investigate reports of
13    abuse or neglect of Gael.

14    157.   To the extent not already stated above, these Defendants further breached the
15    following mandatory statutory duties owed to Plaintiff and Gael:

16    a.    Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405,
17    31-420, and 31-445, by failing to fulfill a social worker's responsibilities for
18    placement.

19    b.    Cal. Welf. & Inst. Code, §16501.1 and CDSS MPP Regulations 31-137 and
20    31-505, by failing to provide adequate supervision, adequate services, and
21    continued case plan updates.

22    c.    Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-301,
23    by failing to provide services consistent with the case plan goals.

24    d.    CDSS MPP Regulation 31-325, by failing to regularly update Rachelle
25    Gomez as to Gael and Ian's status while in placement.

26    e.    CDSS MPP Regulations 31-310, 31-445(i) and 31-405.22, by failing to
27    monitor Gael's physical and emotional condition, and failing to take
28    necessary actions to safeguard the minor's growth and development while in

1      the County's foster placement.

2          f.      CDSS MPP Regulations 31-320 and 31-330, by failing to adequately

3                  conduct face-to-face contacts with Gael.

4    158.   Plaintiff alleges that the County Defendants continuously breached their

5           mandatory duties as set forth in the preceding paragraphs.

6    159.   Plaintiff alleges that had these Defendants not breached their mandatory duties,

7           they would have been required to act upon evidence of the inappropriateness of

8           Gael's placement and would have been obligated to take measures to protect Gael

9           and to provide him with services necessary to properly treat his severe

10          mental/behavioral issues.

11   160.   As a direct and proximate result of Defendants' failure to fulfill their mandatory

12          duties, Gael suffered neglect, abuse and/or mistreatment while under the County's

13          care and supervision, and ultimately caused or contributed to Gael suffering fatal

14          injuries.

15   161.   Plaintiff Rachelle Gomez individually also suffered special and general damages

16          as a result of the continuous acts and omissions of Defendants ultimately causing

17          or substantially contributing to the death of Gael Martinez.

18   162.   As a direct result of the acts and omissions of Defendants, Plaintiff and Gael

19          sustained general and special damages in amounts according to proof at trial.

20                        **SEVENTH CLAIM FOR RELIEF**
                 For Breach of Duties Imposed Under Special Relationship
21                 By Plaintiff Rachelle Gomez, both individually
                       and as Successor in interest of Gael Martinez
22               (As Against All Defendants except City Defendants)

23   163.   Plaintiff hereby refers to, incorporates by reference, and realleges all of the

24          paragraphs of this Complaint as if set forth in full.

25   164.   A special relationship was established between Defendants and Gael under which

26          Defendants owed Gael and similarly-situated minors a duty of due care and a duty

27          to protect Gael from foreseeable harm.

28   165.   Los Angeles County has primary jurisdiction and control of the Los Angeles

County DCFS foster care system including, but not limited to, individuals and facilities established, regulated, licensed, and controlled under the Community Care Facilities Act. Defendants Los Angeles County has primary jurisdiction over the placement, protection and care of juveniles in the custody of Los Angeles County while they are in foster care.

166. Plaintiff alleges that Defendant Los Angeles County maintains primary jurisdiction, control, and responsibility for the health, safety, protection, and well-being of juveniles while they are in custody, which is co-existent with the entities and individuals to which it delegates authority, including group homes and other community care facilities.

167. Defendant Los Angeles County has the primary jurisdiction and a continuing responsibility to investigate the background, history and qualifications of all persons who provide foster care, or who own, operate, or are employed by community care facilities, to insure the health, safety, well-being and protection of minors placed into foster care. Plaintiff and Gael reasonably relied on Defendant Los Angeles County to perform its continuing duty to ensure the qualifications of persons and agencies providing care and the ability of those persons and agencies to meet the needs of the minors placed with them.

168. On or about May 1, 2019, Gael was a detained minor of the Los Angeles County Juvenile Court and was in the custody, supervision, care and control of Defendant Los Angeles County for the purpose of providing care, supervision and control of the minor's health, welfare, safety and care including his behavioral and mental health care. At such time the rights, duties and responsibilities of Gael's parents or guardians were suspended, and such duties and obligations were assumed by Los Angeles County, and such individuals or entities to whom it delegated such duties. Plaintiff thisefore relied upon Los Angeles County to perform its oversight, quality of care inspections, and other duties, and upon the DCFS and/or private foster care providers/Group Homes and agencies with whom Los Angeles County

contracts, to provide such supervision and control over Gael's health, welfare, safety, security and care.  As a result a special relationship was thereby established between Defendants and both Plaintiff and Decedent.

169.  Each of these Defendants knew or should have known that the mental/behavioral health and other needs of Gael exceeded the ability to meet those needs of the providers and facilities in which he was placed. It was foreseeable that Gael would be damaged as a result.

170.  Despite this continuing constructive and actual notice of the needs of Gael and the inappropriateness and inadequacy of the services and placements provided, Defendant Los Angeles County allowed the inappropriate placements and inadequate services to be maintained.

171.  Despite the existence of the special relationships between Defendants, Plaintiff and Decedent, and each of them, Defendants and each of them breached the duty of due care under the special relationship while in the scope of their agency or employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for and protect the health, safety and well-being of Gael and other minors in custody while in foster care of facilities subject to Los Angeles County's jurisdiction and control.

172.  Government Code §820 provides that an employee of a public entity is liable for his or his acts or omissions to the same extent as a private person, and under Government Code §815.2 the public entity that employs the individual is vicariously liable for the torts of its employee committed in the scope of employment.

173.  As a proximate result of the breach of duty of due care under the respective special relationships created and existing between Defendants, Plaintiff and Decedent, Plaintiff individually and Decedent suffered injuries and damages as alleged herein. Gael suffered neglect and mistreatment, which was reasonably obvious and foreseeable and could, should, and/or would have been discovered in the exercise

of due care including, but not limited to, by investigating reports of mental health professionals, by communicating with mental health professionals, by adhering to Los Angeles County *Katie A.* procedures and policies, by conducting in-person interviews and by other established methods and procedures for the supervision, care and oversight of dependent minors while in foster care.

174. Plaintiff alleges that Defendants, and each of them, failed and neglected to establish and implement policies and procedures to ensure the health, safety, continued security, and well-being of Gael and other minors, including, but not limited to, the failure to develop and institute policies and procedures for conducting periodic examinations, in-person interviews, and other methods designed to discover and prevent physical, psychological and unlawful physical and/or psychological abuse, neglect and mistreatment of minors in custody, including Gael.

175. Had Defendants, and each of them, not breached their respective duties of due care under their special relationships, they could, should, or would have discovered evidence of neglect and mistreatment of Gael, or of the unfitness of his service providers to accommodate his mental/behavioral health condition and needs and taken measures to protect Gael from foreseeable harm.

176. As a proximate result of the acts and omissions of Defendants, and each of them, Plaintiff and Decedent sustained general and special damages as alleged herein according to proof at trial.

**EIGHTH CLAIM FOR RELIEF**
By Plaintiff Rachelle Gomez, both individually
and as Successor in interest of Gael Martinez
(as against Defendants Humanistic Foundation, Inc.,
and Group Home DOE Employees 1-10 inclusive)

177. Plaintiff hereby refers to, incorporates by reference, and realleges all of the paragraphs of this Complaint as if set forth in full.

178. At all relevant times, the individual DOE Defendants were acting within the course and scope of their duties with Humanistic Foundation, Inc.

179.  These Defendants, and each of them, owed statutory, regulatory, and generally accepted duties of care to Gael. Namely, these Defendants, had a duty to watch after and/or care for Gael, and ensure his safety while charged with his care and/or supervision.

180.  Pursuant to contract, Humanistic Foundation, Inc., and the individual DOE Defendant assumed custody and care of Gael and enjoyed a special relationship with Gael.

181.  These Defendants knew, or with the exercise of reasonable care should have known, that Gael was prone to self harm, not making safe and independent decisions, was planning to AWOL and/or runaway on a habitual basis, and engaged in illicit drug use on the facility grounds and outside the facility on a habitual basis.

182.  These Defendants refused and/or failed to supervise Gael, implement or set up safeguards to protect Gael, provide minimally adequate care, and/or ensure that Gael did not AWOL and engage in unsafe behaviors.

183.  These Defendants did not stop or attempt to stop Gael from AWOLing and/or running away. Nor did these Defendants report Gael's habitual AWOL and/or runaway behaviors and/or his illicit drug use/abuse to the County, Rachelle, and/or law enforcement. To the contrary, these Defendants permitted Gael's self-destructive behaviors to exist unabated and untreated.

184.  These Defendants breached their respective duties of care to Gael.

185.  As a direct and proximate result of these Defendants' negligence, failure to protect, and/or inadequate supervision, Gael sustained emotional and physical injuries, to an extent and in an amount subject to proof at trial. Gael also sustained psychological, mental, and/or emotional injuries, to an extent and in an amount subject to proof at trial.

186.  These Defendants' acts and/or omissions were a substantial factor in causing Plaintiff's harm.

187.   Defendant Humanistic Foundation, Inc. is vicariously responsible for the conduct of Group Home DOE Employees.

## Jury Trial Demand

188.   Plaintiff demands a jury trial on each Claim for Relief set forth above.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all claims for relief as follows:

1.   General damages and special damages according to proof, but in no event less than $1,000,000;

2.   As against the individual Defendants, punitive damages as allowed by law;

3.   Attorneys' fees, if any, as allowed by law;

4.   Costs of suit incurred hisein;

5.   Pre-judgment interest against all Defendants; and,

6.   Such further relief as the Court deems just and proper.

Dated: April 30, 2021          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC


                                  /S/ Shawn A. McMillan
                                  Shawn A. McMillan, Esq.
                                  Stephen D. Daner, Esq.
                                  Attorneys for Plaintiff Rachelle Gomez